

**Dated: January 8, 2019**

**The following is ORDERED:**

Sarah A Hall
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| POSTROCK ENERGY CORPORATION, | ) | Case No. 16-11230-SAH |
| et al. | ) | Chapter 11 |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| STEPHEN J. MORIARTY as Chapter 11 | ) | |
| Trustee of Post Rock Energy Corporation, | ) | |
|  et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 18-01029-SAH |
| | ) | |
| DAVID J. KLVAC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DAVID J. KLVAC'S MOTION TO DISMISS
AMENDED COMPLAINT WITH PREJUDICE, BRIEF IN SUPPORT
AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 28]**

Before the Court are the:

1.      Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548 and 550

and to Disallow Claims Pursuant to 11 U.S.C. § 502 [Doc. 1], filed on March 30, 2018 (the

"Original Complaint"), by Stephen J. Moriarty as chapter 11 trustee ("Trustee") for PostRock Energy Corporation, et al.[1] (collectively, "the PostRock Debtors");

2.      Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502 [Doc. 24], filed on October 3, 2018 (the "Amended Complaint"), by Trustee;

3.      David J. Klvac's Motion to Dismiss Amended Complaint with Prejudice, Brief in Support and Notice of Opportunity for Hearing [Doc. 28], filed on October 31, 2018 (the "Motion"), by defendant David J. Klvac ("Defendant"); and

4.      Plaintiff's Response to David J. Klvac's Motion to Dismiss Amended Complaint, Brief in Support [Doc. 32], filed on November 28, 2018 (the "Response"), by Trustee.

## OVERVIEW

On April 1, 2016 (the "Petition Date"), the PostRock Debtors each commenced a bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the same day, the Court entered an order authorizing joint administration of the PostRock Debtors' chapter 11 cases for procedural purposes pursuant to Federal Rule of Bankruptcy Procedure 1015(b); however, the bankruptcy estates were not, and are not, consolidated.  On April 7, 2016, the Court entered an order granting an agreed motion to appoint a trustee, and, on

---

[1] The affiliated debtors are PostRock Energy Corporation, the parent corporation ('PostRock"), which owns directly, or indirectly, PostRock Energy Services Corporation ("PESC"), PostRock MidContinent Production LLC ("MidCon"), PostRock Eastern Production, LLC ("Eastern"), PostRock Holdco, LLC ("Holdco"), and STP Newco, Inc. ("Newco"; PostRock, PESC, MidCon, Eastern, Holdco and Newco are collectively referred to as the "PostRock Debtors").

2

April 8, 2016, Trustee was appointed the chapter 11 trustee in these jointly administered

cases [Doc. 75].

In this adversary proceeding, Trustee originally sought to avoid and recover certain

transfers as either preferential or fraudulent under 11 U.S.C. §§ 548 and 550, and to disallow

claims under 11 U.S.C. § 502(d)&(j).[2]  The Court previously dismissed the Original Complaint

as not meeting the "Twombly/Iqbal plausibility standard" of pleading, finding the Original

Complaint "omit[ted] critical information and ma[d]e numerous legal conclusions without facts

to support them," but granted Trustee leave to amend.

The substantially altered and fleshed out Amended Complaint has now been filed

addressing the deficiencies previously identified by the Court.  Nevertheless, Defendant again

seeks to dismiss, with prejudice, the Amended Complaint for failing to meet the "Twombly/Iqbal

plausibility standard."  Defendant's attacks on the Amended Complaint are generally

unwarranted.  The Amended Complaint fairly apprises Defendant of the nature of the claims

against him, raises allegations which, if proven at trial, would establish Trustee's right to recover,

and moves the claims from merely conceivable to plausible.  Trustee is not required, nor

expected, to state specific facts proving each element of his claim so long as fair notice of the

claims and the grounds upon which they rest are set forth.  Higginbottom v. Mid-Del School

District, 2016 WL 951691 (W.D. Okla. 2016); Harris v. Chevron U.S.A., Inc., 2015 WL

3746989 (W.D. Okla. 2015).

---

[2]Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy
Code, Title 11 of the United States Code.

## JURISDICTION

The Court has jurisdiction to hear this Amended Complaint pursuant to 28 U.S.C.

§ 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this

matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by

28 U.S.C. § 157(b)(2)(B) and (H).

## STANDARDS GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS

A plaintiff bears the burden of framing a complaint with enough factual matter to suggest

that he or she is entitled to relief,  Fed. R. Civ. P. 8.; Fed. R. Bankr. P. 7008; Robbins v.

Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).  But Federal Rule of Civil Procedure 8 does not

impose an onerous pleading standard.  In fact, Rule 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Further, the philosophy of

Rule 8(a)(2) is reinforced by Rule 8(d), which permits alternative statements and inconsistent

claims and defenses, and Rule 8(e), which requires pleadings to be construed so as to do justice.

Therefore, federal courts have repeatedly emphasized that pleadings are to be construed liberally

in accordance with the justice mandate in Rule 8(e) and the general spirit of the Federal Rules.

Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1215 (3d ed.).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Higginbottom, 2016 WL 951691, *2 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  "That the court accepts

them as true, however, does not mean the allegations in a complaint are in fact true; a plaintiff is

not required to prove his case at the pleading stage."  Higginbottom, 2016 WL 951691, *2 (citing

4

Glover v. Mabrey, 384 F. App'x 763, 772 (10th Cir. 2010).  A complaint must allege facts which allow the court to believe that plaintiff has a reasonable likelihood of mustering factual support for the stated claims.  Higginbottom, 2016 WL 951691 (quoting Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)).  "Granting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"  Higginbottom, 2016 WL 951691, *2 (quoting Dias v. City & Cnty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001) (internal quotation marks omitted))).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  Sanchez v. Hartley, 810 F.3d 750, 755 (10th Cir. 2016) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))).

## STATEMENT OF FACTS FROM TRUSTEE'S COMPLAINT

### *Facts Applicable to All Causes of Action*

1.    PostRock is the parent company and ultimately owns PESC, Holdco, Eastern and Mid-Continent and non-debtor Constellation Energy Partners Management, LLC ("CEPM").[3]

---

[3]At this point in the Amended Complaint, it is apparent that critical fact allegations made in other similar Amended Complaints filed by Trustee were omitted, presumably unintentionally. The Court is, however, bound to accept the facts as alleged in this Amended Complaint.  While the Court recognizes the difficulty in wrangling the fact allegations in ten separate adversary proceedings, it is not an impossible task and both Trustee and Defendants could have done a better job proofing and ensuring that their pleadings were complete and accurate, and the Court's task was made more difficult as a result of the parties' failure to focus on the details.

2.      Defendant was, at or around August 1, 2014, the Executive Vice President, Chief

Financial Officer and Chief Accounting Officer of PostRock and an "insider" within the

meaning of Section 101(31) of the Bankruptcy Code.

3.      Defendant was an individual for whose benefit certain of the recoverable transfers alleged

in this Amended Complaint were made, and/or an immediate or mediate transferee of

such recoverable transfers.

4.      Although separate general ledgers were maintained for each PostRock Debtor, financial

statements for PostRock were issued on a consolidated basis for book, audit, SEC

reporting, and tax purposes.

5.      The general ledgers maintained for each PostRock Debtor are unreliable due to

intercompany accounting inaccuracies, including the recording of certain assets and

liabilities under the wrong entity's general ledger and not allocating expenses to each

entity.  As such, the PostRock Debtors' separate entity general ledgers, trial balances, and

other accountings may not report correct balances in either balance sheet or income

statement accounts until consolidated.

6.      On December 20, 2012, the PostRock Debtors refinanced their existing revolving credit

facility (the "Borrowing Base Facility"), with PESC and PostRock MidContinent

Production, LLC, as borrowers, secured by a first lien on substantially all of the PostRock

Debtors' assets.  The Borrowing Base Facility is guaranteed by all of the subsidiaries of

PostRock other than non-debtor CEPM.  As of the Petition Date, the principal amount

outstanding under the Borrowing Base Facility was approximately $65 million.

6

7.     The PostRock Debtors struggled financially due to the sharp decline in oil and natural gas prices.  The low price for oil and natural gas significantly affected the PostRock Debtors' revenues from sales of its oil and gas production.  Consequently, in February 2015, PostRock sought to sell substantially all of its assets, but was unable to locate a buyer willing to make an offer sufficient to fully satisfy the outstanding financial obligations under the Borrowing Base Facility.

8.     In February 2016, the PostRock Debtors defaulted under the Borrowing Base Facility, and in March 2016, the lender accelerated the balance of indebtedness rendering the entire principal balance plus all accrued interest immediately due and payable.

9.     The PostRock Debtors' financial difficulties leading to the filing of the Bankruptcy Cases are attributable to a combination of factors, all of which placed significant stress on the PostRock Debtors' liquidity position in the years leading up to the Petition Date. PostRock's financial statements included in its publicly filed SEC Form 10-Q and 10-K filings, for the periods ended September 30, 2012, through September 30, 2014, show PostRock maintained negative total book equity between negative $17.2 million and negative $40.1 million.

10.     In the fourth quarter of 2014, PostRock's financial statements indicated positive equity of approximately $18.2 million; however, PostRock's Forms 10-K for the year ended 2014 stated the value of oil and natural gas properties were calculated under the full cost method, which is a book value.  Book value is not considered a fair value for solvency purposes.  The book value using full cost method of accounting requires write downs and impairments to book value based on reserve pricing.

11.    Additionally, on December 31, 2014, PostRock converted over $41 million in Series A Cumulative preferred stock and other items to equity.  By the second quarter of 2015, PostRock's total book equity had decreased to negative $38.6 million and continued decreasing to negative $105 million by December 31, 2015.

12.    PostRock reported operating losses for each of the five years ending before the Petition Date  – 2011, 2012, 2013, 2014, and 2015.  PostRock's annual SEC Form 10-K for the year ending December 31, 2014, filed on March 31, 2015, reported a net loss from operations of $67,000.  However, the operating loss for the fourth quarter 2014 was $1.07 million as compared to 2014's first quarter operating income of $703,000.  Per PostRock's quarterly SEC 10-Q's, the operating losses were $7.8 million for the quarter ending March 31, 2015, $47.4 million for the quarter ending June 30, 2015, and $41.3 million for the quarter ending September 30, 2015.  The unaudited financial statements for the quarter ending December 31, 2015, shows an operating loss of $22.8 million, resulting in a FY 2015 total operating loss of approximately $119.4 million.

13.    PostRock's annual SEC Form 10-K for the year ended December 31, 2014, filed on March 31, 2015, and as reflected in the 2014 audit report, reported the White Deer transactions had been mischaracterized and that the Series A Preferred Stock should have been recorded as a liability from the outset, not equity.  As a result, PostRock was required to restate its consolidated financial statements for the years 2010, 2011, 2012, and 2013.  These mischaracterizations have to be taken into account in the solvency analysis as far back as 2010 and the effect on the company's financial condition.

8

14.   PostRock's stock price continued to fall from $12.40 at April 1, 2014, to $0.30 at
      December 31, 2015, or an approximate 96 percent decrease in stock price during the same
      period.  Also, for the period December 31, 2014, to December 31, 2015, the stock price
      decreased approximately 85 percent.

***Transfer to or for the Benefit of Defendant***

15.   At various times between 2010 and 2015, even when commodity prices were falling,
      PostRock was laying off employees, and PostRock's financial situation was increasingly
      dire, PostRock implemented bonus and retention incentive plans for certain PostRock
      employees.

16.   The effect of these plans was to reward certain officers, directors, and/or employees with
      financial incentives and bonus payments even when PostRock was failing (or, at the very
      least, was in the "zone of insolvency").

17.   Based on the PostRock Debtors' records, during the two years preceding the Petition
      Date, PESC made a certain payment to Defendant.  The detail of such payment by PESC
      to Defendant is as follows (the "Transfer"):

**Transfer within Two Years of the Petition Date without Reasonably Equivalent Value
(the "Potential Fraudulent Transfer")**

| Date | Amount | Reason/Trans. Type | Title On Payroll |
|------|--------|--------------------|------------------|
| 8/1/2014 | $172,154.21 | Deferred Comp-Distribution | n/a |

**Transfer within Four Years to an Insider while Insolvent**
**(the "Potential Section 117 Transfer")**

| Date | Amount | Reason/Trans. Type | Title On Payroll |
|------|--------|--------------------|------------------|
| 8/1/2014 | $172,154.21 | Deferred Comp- Distribution | n/a |

***Facts Supporting Avoidance of Fraudulent Transfer Under Sections 544(b),***
***Incorporation Section 116 of the OUFTA, and 548 of the Bankruptcy Code***

18.   During the two (2) year period prior to the Petition Date, or between April 1, 2014, and April 1, 2016, Defendant received the Potential Fraudulent Transfer totaling not less than $172,154.21.

19.    PESC and the PostRock Debtors received no value in exchange for the $172,154.21 payment to Defendant.

20.   At all relevant times between April 1, 2014, and April 1, 2016 (the "Lookback Period"), PESC was Insolvent.  Further, the PostRock Debtors were also insolvent on a consolidated basis.

21.   Additionally, at all relevant times in the Lookback Period, Defendant was listed as Executive Vice President, Chief Financial Officer and Chief Accounting Officer of PostRock and an insider.

22.   Further, the $172,154.21 payment was not regular earnings or wages.  Rather, the $172,154.21 payment was solely comprised of deferred compensation.  Thus, this payment was not made in the ordinary course of business.

23.   Payroll records indicate the $172,154.21 payment was made by PESC and processed through an ADP payroll account.

24.  In keeping with historical practices, the ADP payroll account processed funds by drafting funds from a BBVA Compass account in the name of PostRock.

25.  There is no services agreement or agreement governing payroll between PostRock and PESC.  Further, upon information and belief, intercompany accounting records regarding payroll are unavailable or unreliable.

### *Additional Facts Supporting Avoidance of a Fraudulent Transfer Under Section 544(b) of the Bankruptcy Code and Section 117 of the OUFTA*

26.  At all relevant times, Defendant was an officer of the PostRock Debtors.

27.  At all relevant times, Defendant knew, or had reason to know, the financial condition of PESC and the PostRock Debtors.

28.  Payroll records indicate the Potential Section 117 Transfer was made by PESC and processed through an ADP payroll account.

29.  In keeping with historical practices, the ADP payroll account processed funds by drafting funds from a BBVA Compass account in the name of PostRock.

30.  There is no services agreement or other agreement governing payroll between PostRock and PESC.  Further, intercompany accounting records regarding payroll are unavailable or unreliable.

### <u>CONCLUSIONS OF LAW</u>

The arguments made in Defendant's Motion suggest Defendant's counsel has lost sight of the current standard of "notice" pleading and seeks a return to the days of long-winded, proof-oriented complaints.  "What the rules of notice pleading call for is a complaint alleging enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the

stated claims.  Matthews v. Bergdorf, 889 F.3d 1136, 1149 (10th Cir. 2018) (citing Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ridge at Red

Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he complaint must give

the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual

support for these claims.")).  Trustee has now satisfied this burden with regard to his claims

against Defendant.

The Court interprets Trustee's Amended Complaint as identifying PESC as the

transferor,[4] and below, it endeavors to briefly and succinctly state its rulings on the specific

arguments made in the Motion so the parties can proceed with finally litigating the merits of this

matter.

## I.     THE AMENDED COMPLAINT ALLEGES THAT PESC HAD AN INTEREST IN THE PROPERTY TRANSFERRED.

Trustee's Amended Complaint clearly states that "PESC made certain payments" to

Defendant (Amended Complaint, ¶ 28) and that such payment was made through an ADP payroll

---

[4]Trustee's Amended Complaint clearly states "PESC made certain payments to Defendant" (Amended Complaint, ¶ 28), and further focuses on PESC as the transferor in its stated claims.  However, the Amended Complaint also alludes to avoidance and recovery of all transfers "made by the PostRock Debtors" (Amended Complaint, ¶ 37).  Additionally, Trustee's Response states "Trustee will seek to avoid and recover from defendant for whose benefit transfers were made by any of the PostRock Debtors," and alleges "Trustee has sufficiently stated a claim on behalf of all Debtors." (Response, p. 5).  The Court strongly disagrees.  In its September 6, 2018, order dismissing Trustee's Original Complaint, the Court found it deficient, in part, due to failure to identify the transferor, stating "because the 'PostRock Debtors' consist of six different entities, which have been joined for procedural purposes only, the Complaint does not adequately identify the transferor."  Having emphasized that Trustee's identification of the specific PostRock Debtor making the transfers was necessary and critical, the Court construes the Amended Complaint as identifying only PESC as the transferor.  Absent Trustee being granted leave to amend, the Court will not consider the transfer as being made by any other PostRock Debtor.

account (Amended Complaint, ¶ 34).  PESC's exercise of control over the payment make it plausible, rather than merely conceivable, that PESC had an interest in the funds paid to Defendant.

## II.    ONLY TRUSTEE IS A PLAINTIFF IN THIS ADVERSARY PROCEEDING.

Defendant misses the mark in suggesting that the bankruptcy estates of PostRock, Holdco, Eastern, Midcontinent, and Newco are plaintiffs in this action.  Trustee is the only plaintiff, and he is trustee for not only PESC but also PostRock, Holdco, Eastern, Midcontinent, and Newco, in their jointly administered bankruptcy cases.  The Court finds Trustee's identification of himself in the Amended Complaint as neither conclusory nor muddled, but simply accurate.

## III.    INSOLVENCY IS PLAUSIBLY PLED.

Courts liberally review constructive fraud claims brought by a trustee, given his position as a third party outsider to the debtor's transactions.  In re PennySaver USA Publishing, LLC, 587 B.R. 445, 456-57 (Bankr. D. Del. 2011) (citing In re FAH Liquidating Corp., 572 B.R. 117, 127 (Bankr. D. Del. 2017)).  Herein, Trustee is obligated to plausibly state that PESC, the transferor, was insolvent at the time each of the Transfer was made.  The Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation."  LTF Real Estate Co., Inc. v. Expert South Tulsa, LLC, (In re Expert South Tulsa, LLC), 522 B.R. 634, 652 (10th Cir. BAP 2014) (citing 11 U.S.C. § 101(32)).  The test for insolvency under the Oklahoma Uniform Fraudulent Transfer Act is also a "balance sheet" test identical to the test for insolvency under the Bankruptcy Code.

Stillwater Nat'l Bank and Trust Co. v. Kirtley (In re Solomon), 299 B.R. 626, 633, 638 (10th Cir.

BAP 2003).

Without a doubt, the Original Complaint contained only threadbare and conclusory

allegations that PESC was insolvent when the Transfer was made.  The difficulty facing Trustee

in correcting such allegations in the Amended Complaint are the facts that:  (i) the PostRock

Debtors maintained consolidated books and records for book, audit, SEC reporting, and tax

purposes; (ii) while separate ledgers were maintained for each PostRock Debtor, the entity

ledgers have proven to be unreliable and inaccurate; and (iii) Trustee was not in control of, and

had no input in, the preparation of the consolidated books and records or the entity ledgers at the

time of the Transfer, having been appointed chapter 11 trustee only after the cases were filed and

having no connection to the PostRock Debtors prior to his appointment.[5]  While these facts and

circumstances may ultimately make proving insolvency on an entity basis difficult, they should

not be a barrier to Trustee seeking relief.

It is settled law that the determination of insolvency is a fact question, and fact questions

are not determined on motions to dismiss.  LaMonica v. CEVA Group, PLC (In re CIL Limited),

582 B.R. 46, 104 (Bankr. S.D. N.Y. 2018) (citing Lawson v. Ford Motor Co. (In re Roblin

Indus.), 78 F.3d 30, 35 (2d Cir. 1996) and Tronox Inc. v. Andarko Petroleum Corp. (In re Tronox

Inc.), 429 B.R. 73, 97 (Bankr. S.D. N.Y. 2010)).  Accordingly, the Court will consider "only

whether the Trustee has alleged facts from which the Court can reasonably infer that it is

---

[5]See Verified Statement of Stephen J. Moriarty [Doc. 74-1], filed on April 8, 2016, in the
Bankruptcy Case.  It is well established that a court may take judicial notice of its own records as
well as records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F.
App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d
1169, 1172 (10th Cir. 1979)).

plausible" that PESC was insolvent at the relevant times.  CIL Limited, 582 B.R. at 105 (citing

Spradlin v. Monday Coal, LLC (In re Licking River Mining, LLC), 571 B.R. 241, 262 (Bankr.

E.D. Ky. 2017)).  A complaint must contain enough factual information to plausibly show that

the assets of the debtor exceeded its liabilities at the time(s) of the transfers.  Spradlin v.

Wrigley's 7-711, Inc. (In re Licking River Mining, LLC), 572 B.R. 830, 844 (Bankr. E.D. Ky.

2017).

The Court finds Trustee has done an adequate job of plausibly stating that PESC was

insolvent.  First, Trustee alleged that PESC was insolvent for the period between April 1, 2014,

and the Petition Date (Amended Complaint ¶ 31).  Additionally, PESC was a wholly owned

subsidiary of PostRock and was one of two primary obligors under the $200 million Borrowing

Base Facility with Lenders.  On the Petition Date, the outstanding indebtedness was

approximately $65 million.  When oil and gas prices sharply declined in 2014, the PostRock

Debtors faced declining asset values, as reflected by negative book equity of $17.2 million in

September 2012, to negative $40.1 million in September 2014.  Revenues also declined,

operating losses mounted, and stock prices declined 413 percent from April 1, 2014, to

December 31, 2015.  From these facts, Trustee paints a plausible picture of insolvency for the

PostRock Debtors *as a whole and separately*.[6]

Because the Amended Complaint states that PESC was primarily liable on the

$200 million Borrowing Base Facility with a balance of $65 million on the Petition Date and at

a level exceeding the combined asset base of the PostRock Debtors and *far exceeding* the asset

---

[6]As of the Petition Date, Postrock's schedules reflected assets of $4,613,256.58 compared
to liabilities of $68,259,738.67.

base of PESC by February 2015,[7] Trustee has plausibly stated that PESC was insolvent at the relevant times. At trial, as opposed to on a motion to dismiss, Trustee will be required to prove PESC's insolvency at the relevant times on an entity basis – as the PostRock Debtors' estates remain separate, having not been substantively consolidated but only jointly administered.

## IV. THE AMENDED COMPLAINT PLAUSIBLY STATES THAT PESC DID NOT RECEIVE REASONABLY EQUIVALENT VALUE.

Similar to insolvency, courts also liberally review claims for constructive fraud based on a lack of reasonably equivalent value because of the trustee's position as a third party to the debtor and its transactions. PennySaver, 587 B.R. at 457. On its face, the Amended Complaint plausibly states that no reasonably equivalent value was received in exchange for the Potential Fraudulent Transfer for a very simple reason. The Amended Complaint alleges that the Potential Fraudulent Transfer was made by PESC. However, Defendant was not employed by PESC, but rather by PostRock. Yet, the Potential Fraudulent Transfer was made by PESC, plausibly suggesting the absence of reasonably equivalent value in exchange. Courts have long recognized that transfers to benefit non-debtors or even affiliates of debtors provide no direct benefit to the debtor. Kreigman v. Wallin Harrison, PLC (In re LLS America, LLC), 2013 WL 6388564 (Bankr. E.D. Wash. 2013) (citing Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991 (2$^d$ Cir. 1981) and Leibowitz v. Parkway Bank and Trust Co. (In re Image Worldwide), 139 F.3d 574, 578 (7th Cir. 1998)).

In this instance, Trustee states a sufficient, albeit minimum, set of facts to place the issue of value received and the reasonable equivalence thereof in controversy. See In re Petters Co.,

---

[7]As of the Petition Date, PESC's schedules reflected nominal assets of $220,835.04 compared to liabilities of $62,026,844.00.

Inc., 495 B.R. 887, 920 (Bankr. D. Minn. 2013).  The Amended Complaint satisfies the pleading

requirements that PESC did not receive reasonably equivalent value for the Potential Fraudulent

Transfer.

## V.   TRUSTEE'S SECTION 117(B) CLAIM STATES A CLAIM.

Defendant argues that, based on material outside of the Amended Complaint, he was not

an insider of PESC.  Additionally, Defendant recognizes that Trustee plausibly, albeit

incorrectly[8] according to Defendant, alleges that Defendant was an insider of PostRock but not

PESC.  Defendant is wrong on both counts for the following reasons.

First, the Amended Complaint clearly states that Defendant was the Executive Vice

President, Chief Financial Officer and Chief Accounting Officer of PostRock at or around

August 1, 2014, the date the Transfer was made.  Amended Complaint, ¶ 14 (on p 4).[9]  Under

Section 101(31)(B)(ii and iii), an officer and a person in control of a debtor are considered

insiders.  Thus, per the facts set forth in the Amended Complaint, Defendant is an insider of

PostRock.

Second, PostRock is the ultimate owner of  PESC's stock.  Amended Complaint, ¶ 16

(the first ¶ 16 on p. 4).  Under Section 101(31)(E), an affiliate or insider of an affiliate is

considered an insider of the debtor.  An affiliate is defined as "an entity that directly or indirectly

---

[8]In considering a motion to dismiss under Rule 12(b)(6), this Court will not consider
matters outside of the Amended Complaint without converting it to a motion for summary
judgment.  Alvardo v. KOB-TV, L.L.C., 493 F.3d 1210, 1216 (10th Cir. 2007).  This Court
declines to convert the Motion to a motion for summary judgment at this early stage of the
adversary proceeding.

[9]The Amended Complaint begins renumbering the numbered paragraphs on p. 4 after the
original paragraph 16.

owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor."  11 U.S.C. § 101(2)(A).  As PESC is owned by PostRock, and Defendant is an insider of PostRock, the Amended Complaint plausibly states that Defendant is also an insider of PESC as he is an insider of an affiliate of PESC.

## CONCLUSION

For the reasons set forth above, the Motion is DENIED.  Defendant is directed to file an answer to the Amended Complaint no later than fourteen (14) days after entry of this Order.

IT IS SO ORDERED.

# # #